Next case today, case number 221823, Estados Unidos Mexicanos v. Smith & Wesson Brands Inc. et al. Attorney Shadowin, please introduce yourself for the record. Pleased court, my name is Steve Shadowin. I represent the government of Mexico in this matter. My colleague, Mr. Lowy, and I have agreed to split the argument. I'll have eight minutes, he'll have seven. And with the court's permission, I would like to reserve for rebuttal two of my eight minutes. You may. The district court here committed three errors, each of which independently is sufficient to require the reversal of the court's grant of the motion to dismiss this complaint. I will address the court's error in applying the presumption against extraterritoriality. And also the court's error in the application of small v. U.S. to PLACA, even if PLACA otherwise applied. And I'll also address any questions that the court may have about choice of law. Mr. Lowy will address the district court's error in becoming the first and only court in 20 years of litigation under PLACA to conclude that the predicate exception applies only if the violated statute provides a private right of action. Mr. Lowy will also address any questions the court has about proximate cause or duty. With respect to the presumption against extraterritoriality, the Supreme Court over the last dozen years has emphasized again and again and vociferously, and as recently as last month, the requirement that every federal statute is subject to a presumption against extraterritoriality. That is, that the statute does not apply extraterritorially unless Congress has affirmatively and unmistakably instructed that the statute shall apply. And the purpose of that presumption is to avoid unintended clashes with the interests of foreign sovereigns. And it ensures, in essence, to really put it to the nut of the matter, it ensures that if applying a statute extraterritorially is going to have some possible foreign policy implication, that that decision, whether to go ahead and apply the statute despite those foreign policy implications, that that decision is made by the political branches and not by the courts. Well, how is this even being applied extraterritoriality in an extraterritorial way? Well, because the plaquette defines the claims that are precluded. And it defines the claims as those that arise from injury from gun misuse. That's what the statute says. This is not an absolute prohibition on claims against gun manufacturers. That's not this statute. The statute defines the claims that are precluded. And it defines them to be claims arising from injury from gun misuse. But it doesn't preclude claims filed in Mexico courts. It just regulates what can be filed or not filed in U.S. courts. With respect, Your Honor, it doesn't regulate what can be filed in U.S. courts.  Well, it says certain claims can't be filed in U.S. courts. That's correct. So suppose Congress said no punitive damage claims can be filed in federal courts. Would that be run into extraterritoriality issues? It would determine what the focus of that statute is. And that's where the district court here erred. The district court correctly found that, in general, the defendants had not overcome the presumption against extraterritoriality at the first step in the two-step inquiry. It then turned to the second step. I'm not sure I heard an answer to my question. Could Congress say no punitive damage claims filed in U.S. courts? It could say that. Then the question would be what is the focus of that statute and does the conduct relevant to that focus occur in the United States or abroad? And you would have to apply the focus inquiry to that statute. And how would you get an answer? I mean, suppose it was clear they did it because they wanted to protect U.S. manufacturers and defendants generally from punitive damages. If that were the focus of the statute, and then if the conduct relevant to that focus occurred in the United States, then you would say that's permissibly domestic. The difference here is that the Supreme Court in western GECO has made absolutely clear when there are different provisions, two provisions of a statute, and they work in tandem, the court must determine the focus of each of those provisions and then apply the inquiry there. Here, section 7902A of PLACA says that no qualified civil liability action can be brought in a federal or state court. And then the term qualified civil liability action is a defined term. So it is clear that that works in tandem with section 79035A, which provides the definition of a qualified civil liability action. And it is there the focus inquiry must be made with respect to that provision. And ABBATRON last month made clear that we're not looking at the focus overall of the statute. We're looking, this focus inquiry is made provision by provision. You must determine the focus of each engaged provision. And here, when the focus inquiry is made on section 79035A, it is clear again that the focus of that statute is injury from gun misuse, and that conduct occurs in Mexico. Let me ask you, do you agree that this statute, what it purports to be, it's a jurisdiction stripping statute, correct? We don't believe this is a jurisdiction stripping statute, but even if it is, the two-step inquiry still applies. The Supreme Court has made very, very clear it applies, this inquiry applies to every statute of every kind, including jurisdictional statutes. So the result of the statute would be that, for example, Mexico would have greater rights in a U.S. court than U.S. citizens who can't seek any remedy, correct? That's the practical effect. That would be a practical effect in this instance, subject to the exceptions that the statute allows for U.S. citizens. But I'll point out that that's not at all an unusual circumstance. In RGR Nabisco, the holding in that case was that there would be no U.S. federal claim under RICO unless the injury occurred in the United States. The Supreme Court then goes on and says, but that doesn't stop foreign sovereigns from suing in the United States under their own laws that may well give them a right of action. So it's not at all unusual. Let me then, just a third part of the question, let's assume that you are able to bring the lawsuit here in federal court. It's diversity, so you're applying Massachusetts law. Doesn't Massachusetts law look the conflict of law rules to the place where the most significant relationship to the cause of action? Isn't that the test in Massachusetts? That is the test in Massachusetts, but we think that that points to the application of Mexican law. But it really doesn't, as far as I'm aware, doesn't affect significantly any of the issues before the court today because, just to make crystal clear, it's the two-step inquiry that determines whether the federal statute applies abroad, and then choice of law issues affect only what tort law, in essence, applies. One last question, I apologize. If you cannot sue, if we were to confirm the district court, Mexico cannot sue in federal court here in the United States, it would have to use its own courts. The problem is then enforcing the judgment. That's the issue. If you come to the United States, I guess under the court's reasoning, if we were to affirm PLACA would still not, you wouldn't be able to bring an executor action to execute that judgment, correct? The government has not yet taken a position on whether PLACA would preclude an enforcement action. But really the reason we sued in the United States, yes, we would like money damages for the injury that has occurred, but there are 20,000 deaths a year that are caused by this conduct. What we want is an injunction to make these defendants start paying attention to their distribution systems, and it's only U.S. courts that can provide an injunctive relief. I just want to turn back. You said the focus is the injury from gun misuse. Yes, ma'am. And I've been trying to narrow down what your argument is on focus, and I'm wondering if you can sort of address this question. I understand your argument to be the resulting harm in Mexico is the injury, but is that sufficient to satisfy the relevant conduct test? And I keep thinking about the fact that these guns were all sold in the United States. Is your focus too narrow? Shouldn't we see a broader relevant conduct test here, or am I looking at this incorrectly somehow? I don't think you're looking at it incorrectly, but there is a different take on it, and that is that step two, this again was very helpful when Abitron recently clarified this. Step two of the two-step inquiry really is applying the presumption against extraterritoriality in a circumstance in which there is some relevant conduct in the United States, but also some relevant conduct abroad. That's the second step. And here what matters, and the other thing is you may be tempted to say, well, where's the defendant's conduct? And we say the defendant's conduct is both in the United States and in Mexico since they're illegally importing these guns, in effect, into Mexico. But the point is the focus inquiry asks where does the relevant conduct, where does the conduct relevant to the focus occur, and it doesn't have to be and often is not the defendant's conduct. For example, in the Morrison case, the court concluded that the focus of the Securities and Exchange Act is not where the fraud occurs, but what the statutes focus on is where does the securities transaction occur. And so the defendant's conduct occurred in the United States, but the conduct relevant to the focus, that is the securities transaction, which was not conduct by the defendants, it was conduct by the victims, occurred in Australia. And a similar sort of thing occurs in RJR Nabisco where the defendant's conduct, the wrongful conduct, occurred in the United States, but the focus of that provision, the injury, occurred abroad. And the injury obviously was incurred not by the defendants, but again by the victims. So it's the conduct relevant to the focus, and the statute itself defines the claims that are precluded by injury from gun misuse and the conduct relevant to both of those elements. The substantive elements of the defined claims that are precluded occurred in Mexico. Thank you, Mr. Shadler. Thank you. Attorney Latley, please introduce yourself for the record. May it please the Court, Jonathan Lowy also for the Appellant Government of Mexico. I would like to reserve two minutes for rebuttal, Your Honor. I think you've got, what, seven minutes, but you can reserve one. Thank you, Your Honor. Even if PLACA applies to this case, it does not bar this case because the Protection of Lawful Commerce in Arms Act does not protect unlawful commerce in arms. PLACA is clear about this under the predicate exception. The predicate exception has been construed by dozens of courts around the country, federal and state, and every single one of them except for the district court below has recognized that the predicate exception disentitles gun companies that knowingly violate gun laws, including federal gun laws, and thereby cause harm. The Ninth Circuit said that the predicate exception has two aspects, and I'm paraphrasing. One, you prove a predicate violation, and two, you prove a viable claim. The district court, without any reasoning, held that the predicate exception only allows for statutory claims. It's totally inconsistent with the text of PLACA, its structure, and its intent. The sponsor stated repeatedly, specifically, that if you violate federal gun laws, you do not get protected. PLACA also knew how to write an exception that applied specifically to certain claims, and it did so by allowing for actions for negligent entrustment, for example. It did not do so with predicate exception. It allowed for actions in which there's a knowing violation. And the examples in PLACA... Let's assume what you just said is correct. What, then, is the cause of action that would involve the manufacturer knowingly violating the state or federal statute? Could you focus in on that? Yes, Your Honor. Is it an aiding and abetting theory that the dealer is violating federal and state gun laws, and the manufacturer is aiding and abetting that, and therefore is equally liable? Is that the theory? There are two theories, Your Honor. One of them is what you've described. The second one is that the manufacturer's sale of assault weapons that can be easily modified to fire automatically constitute machine guns under an ATF ruling 82-8, and that is a violation of federal law and a predicate violation. And I would point, Your Honors, to four cases which I think resolve all of these liability issues. Number one, Smith & Wesson v. Gary, 875 Northeast 2nd, 422. Indiana Court of Appeals construed very similar allegations about negligent distribution practices of these defendants and found that those allegations supported predicate violations, violations in that case of state laws, but no real distinction between the federal laws, and a violation of Indiana's public nuisance statute. And because of that predicate violation, the court held that the defendants were not protected under PLACA, so the court allowed for negligence claim, public nuisance claim, and others. Same thing should apply here. Two, direct sales v. United States. United States Supreme Court upheld a criminal conspiracy conviction of a drug manufacturer for conduct very similar to the defendants, and the court stated at length that when you're dealing with a restricted product, like machine guns or drugs, the standard of proof of knowledge and intent is far lower than with other products. But you keep mentioning machine guns, and what these manufacturers distribute are not machine guns. They are modified by, and we see it here in this court, people modify these items, but that can happen to any other lawful object and can be modified. So what's the theory for the machine gun and making these defendants liable? Well, for one, the distribution theory accepted by direct sales and Smith, Wess, and Vigueri applies even if these aren't machine guns. So, however, there's the second theory, which is that defendants know that the way they design the guns can make them easily modifiable to fire automatically. They don't have to make them that way. They choose to make them that way, and ATF ruling 82-A says that if you have an easily modifiable gun that can be easily modified to fire automatically, that constitutes machine gun. And that gets me to the third case that I would refer the court to, which is Parsons v. Colts. Federal District Court in Nevada considered very similar allegations about the modifiability of assault weapons into machine guns, and the court found those allegations make out a violation of law and a predicate violation, and therefore the court allowed the common law wrongful death claim to proceed. And the fourth case I would point your honors to is City of Boston v. Smith & Wesson, which is before PLACA, but in that case, Judge Hinkle considered very similar allegations brought by the City of Boston, and Judge Hinkle explained at length how those allegations support negligence claim under Massachusetts law, proximate cause, and duty, and that opinion pretty much rebuts all of defendants' arguments on proximate cause and duty and makes clear that there is an underlying viable claim here that's been alleged. Talking about duty, obviously here we have the Second Amendment that applies in the United States, obviously perhaps in Mexico, other places it doesn't apply, but even with that fact and the fact that individuals are entitled to purchase and have weapons and bear arms, does that still allow you to, for purpose of the duty, where is the duty violated in light of the Second Amendment? Well, your honor, I don't think any court has held that there is some Second Amendment right to negligently or certainly not illegally sell and make guns. So the Second Amendment, in my view, is a non-issue, and the duty here is the basic duty under Mexican law or Massachusetts law, which is basically to not engage in conduct such as selling guns to the general public in a way that fails to use reasonable care to prevent foreseeable injury to others. And there's absolutely no authority that that duty stops at the border. If it did, that would mean that the CEO of a gun manufacturer could call up a cartel boss, arrange how to illegally traffic guns together, and do it, and there'd be no duty. By the way, also under the district court's reading of PLACA, there would be immunity for that manufacturer because there is no statutory right of action under the Gun Control Act. And let me ask you, because you're asking that Massachusetts law, you look to Mexico law. So even if Massachusetts law per se would not have a cause of action, federal law wouldn't have, you're still saying that applying Mexico law in the U.S. court would give you that cause of action, correct? Our first argument is that Mexican law applies, and we have proven, and it's unrebutted by the defendants, that we have a cause of action under Mexican law. However, if the court rejects that and applies Massachusetts law, we certainly have a cause of action, and City of Boston v. Smith & Wesson, it makes that clear. Thank you. Thank you, Mr. Lowe. Thank you, Your Honor. Attorney Francisco, please introduce yourself for the record. Thank you, Judge Kayada. May it please the court, Noel Francisco v. Smith & Wesson, I will be presenting argument on behalf of all of the defendants this morning. Your Honors, a statute's focus is the object of its solicitude, the interest it seeks to protect, and the conduct it seeks to regulate. Here, PLACA protects the U.S. firearms industry by prohibiting lawsuits in U.S. courts. Indeed, that is the only conduct that it regulates. So this is a purely domestic application of law, no different than applying Article III's injury in fact requirement, or Section 1332's amount in controversy requirement to this case, both of which are satisfied by Mexico's injuries in Mexico. The only question, then, is whether Mexico's lawsuit satisfies the predicate exception, and it doesn't for three reasons. First, Mexico hasn't adequately alleged any violation of U.S. law, not aiding and abetting liability under Twitter, not the machine gun ban under the Supreme Court's decision in Naples, and this court's decision in Nevis-Castro. And even if they had, they haven't adequately alleged proximate cause under the Third Circuit's decision in City of Philadelphia against Beretta. Don't they allege that the dealers engage in sales that are flatly violative of various U.S. laws? They allege that there are retailers that violate U.S. law. But the retailers aren't the defendants here. Step one is to show there's some allegation of a violation of U.S. law. Right. It does seem to say, as I read the complaint, it does seem to say that what you call the retailers are violating U.S. law, point one. Now you raise the point, but that's not the defendants. Right. It seems the complaint then acknowledges that, at least on one of their theories, but then says the defendants are aiding and abetting those violations, and under Federal law, one who aids and abets a violation of Federal law is as liable as the principal. Right. So the logic would therefore be that the manufacturers, by aiding and abetting clear-cut violations of Federal law and State law, are themselves as liable as the principal retailer. Sure. I understand the theory. What's wrong with that theory? But if you were to accept that theory, you would have abandoned aiding and abetting liability well beyond anything ever recognized, to the detriment not just of these defendants, but all criminal defendants. Could you explain why that is? Of course. Because the Supreme Court's recent decision in Twitter makes quite clear, walks through these principles, that you don't come close to establishing aiding and abetting liability if all a defendant does is generally make their products available and then stand back and are largely indifferent to what happens down the road. This is actually an easier case than Twitter. In Twitter, the complaints alleged that the social media companies were dealing directly with the terrorist organizations. In fact, there was an allegation that Google reviewed and approved terrorist content and shared the profits with the terrorists. But the Supreme Court held that that still wasn't good enough because it didn't show the type of joint purpose and affirmative conduct that aiding and abetting liability required. So how do you distinguish direct sales? I think that's very easy to distinguish, Your Honor. That is a case where you had a morphine manufacturer that was selling directly to a doctor in such massive and unusually large quantities that there was no possible lawful explanation. Here, the defendants don't sell directly to anyone. You've got lawful manufacturers that sell to lawful distributors that in turn sell to lawful retailers and on down the chain. But the allegation is that, sure, now unlike direct sales, the manufacturers have interposed another intermediary in the distribution chain. But the allegation is still there as in direct sales that the manufacturer knows what the retailers are doing. And that is precisely what the Supreme Court in Twitter rejected, that mere knowledge that somewhere down the chain somebody is going to use your product to engage in some illegal activity is not enough to satisfy aiding and abetting liability. In small, you arguably had that kind of joint purpose because they were directly selling to a particular doctor in massive and unusual quantities. Here, Mexico concedes that the vast majority of retailers are totally law-abiding. They concede that only 2% of all American firearms find their way into Mexico. They don't allege that the defendants sell to anybody that they know or have reason to know are going to use those firearms to commit a crime. And they don't allege that the end users, any particular retailers, any particular cartels are subject to any kind of specialized treatment. Instead, as in Twitter, the most that you can say is they make these things generally available and then at worst stand back and are indifferent to what happens afterwards. Suppose they know there's dealer X, retailer X on the border with Mexico and that it's ordering huge quantities of guns and they know that those guns are being sold to cartel members. If you assume arguendo that those are the facts, are you saying that wouldn't be enough for aiding and abetting liability? Well, Your Honor, I think if those were the facts alleged, I would still be saying that that's not enough. But here there's no allegation. Why isn't that enough? Because, again, unless you've got some kind of allegation that particular retailers are being treated any differently in their business models, it falls four square under Twitter, where, again, the social media companies were alleged to have known that terrorists were using their platforms. One of them was alleged to have actually reviewed and approved the content and shared in the profits. But the court said that even if you know that lots of people are going to do bad things with your product, unless you're treating them differently than everyone else, that doesn't show the type of joint purpose and affirmative conduct that aiding and abetting liability requires. The other point I'd add, though, Your Honor, and I actually think this may be the easiest way to resolve this case, is even if you disagree with me on aiding and abetting liability, and I'm happy to continue on this as long as you want, but even if you disagree with me on aiding and abetting liability, they still haven't come close to showing proximate cause, and I point you directly to the Third Circuit's decision in the Philadelphia against Beretta case. That was an opinion joined by then-Judge Alito and current-Judge Ambrose, and it rejected a complaint at the motion-to-dismiss stage that's virtually identical to this one, where Philadelphia sought to hold a group of manufacturers liable for injury caused by the misuse of firearms in Philadelphia. With respect, this case is actually even easier, and easier than the other cases my friend cited, because we have a chain of causation that reaches well beyond the United States and into a foreign country. You have licensed manufacturers that sell to licensed distributors, that sell to licensed retailers, that sell to individuals who satisfy the requirements of federal law, but some of whom happen to be straw purchasers. The same thing could be said of a pharmacist in West Virginia who is selling OxyContin in huge quantities. Your Honor, I think it is two responses. One, there are courts that have rejected proximate cause in that context, including the West Virginia court. Two, that is a much tighter chain of causation, because there the pharmacists are actually selling directly to the end users. That's the chain of distribution. And three, all of those issues are currently on appeal. But here the chain goes well beyond the consumers, because the initial purchaser then hands it off to a smuggler. The smuggler smuggles it across an international border, hands it to a foreign criminal organization that uses it to commit crimes in a foreign country that injure foreign citizens and in turn flow up into damages to a foreign government. On top of all of that, you've gotten multiple criminal intervening acts. You've got derivative injuries from third parties, and it's virtually impossible to allocate injury and liability across the numerous victims and alleged wrongdoers in this long chain of events. Respectfully, this is a poster child for the absence of proximate cause. It falls four square under the Third Circuit's decision in Philadelphia. Let me ask you, mention was made about machine guns. These weapons can be easily modified. And, of course, they're not manufactured to be machine guns, but knowing that they can be readily modified, wouldn't that be a possible basis of liability in taking it out of the placa? No, Your Honor, and I would point you directly to this Court's binding decision in Nevis-Castro, and I'm quoting. While an automatic weapon meets the definition of a machine gun, a semi-automatic weapon, in that case it involved an AK-47, does not. 480 F-3rd at 600, citing the Supreme Court's decision in Staples. And that's because these are not designed to be machine guns, and they can't be made into machine guns unless they are first modified into machine guns. But it's very easy to modify. Anybody, you know, and we get cases, you know, just getting a chip or... Yeah. Doesn't that, and again, in general tort law, you go back to everybody's law school days, there's cases where normally manufactured, you know, product, you know, there's a modification and then there's liability. It's not a machine gun simply because it can be modified into a machine gun. That's precisely what this Court held in Nevis-Castro. It either has to be designed as a machine gun, which this isn't, or it has to be capable of being restored into a machine gun, and you can't restore something into a condition that it never occupied in the first place. Otherwise, the federal government has been ignoring rampant violations of the machine gun ban for decades. You will have to convert it into... Suppose it's not a machine gun, okay, but suppose in discovery the evidence shows there's a meeting at one of the manufacturers, and the subject of the meeting is how do we design this so it can be most easily converted into a machine gun? Would you, if that evidence, and I'm not saying that evidence exists, but for purpose of a hypothetical, if that evidence exists, are you saying there'd be no liability for the manufacturer for intentionally having tried to make sure the gun could be converted to a machine gun as easily as possible? Sure we are, and in two responses. First, that's not this case, but I will put that to the side. Secondly, no, it's still not a machine gun. If it was not originally designed as a machine gun, it's not a machine gun, and you cannot restore something to a position it never occupied in the first place. But in any event, if you were to disagree with me, not only has the federal government been derelict in its duty by not enforcing the law for decades, you've converted not just these defendants into felons, but all of the millions of Americans who currently possess these firearms. The AR-15 is one of the most popular rifles in America, and this whole debate that we've been having over the assault weapons ban, the expiration of the old one, and whether to adopt a new one, it is totally irrelevant, because lo and behold, the very same weapons are already banned by the machine gun ban. At the very least, our position would be compelled by the rule of lenity, since this is, after all, a criminal statute. So I don't think it's even a close call on the machine gun ban. To me, the real questions are aiding and abetting liability. I think that's squarely governed by the Twitter case, and proximate cause, which is squarely governed by Philadelphia against Beretta. There's a whole array of different damage theories, and some of them are more attenuated or have more causal chains in them, but some of them seem a bit more directly proactive steps that the government alleges it was required to take because of the import of these products. I mean, suppose they needed to increase their border guards to intercept these. Are you saying that wouldn't have been proximately caused by the very violation of the retailers? Absolutely, Your Honor, I would say that, because you still start with licensed manufacturers to licensed distributors to licensed retailers to straw purchasers to smugglers who then smuggle across the border. Just focus on the retailer. Claim against the retailer. You know, if it had a claim directly against a retailer that was alleged to have engaged in that conduct, none of which are part of this complaint, I think the analysis would at least be different. If I were representing them, I would still be making a proximate cause argument. It would be a more difficult one than I'm making here. Well, then, if that is correct, then you're really dependent not on a proximate cause argument but on Twitter, because if the retailer could be held to have proximately caused damages and aiding and abetting violation is tenable here, then you've got the connection. I don't think so, Your Honor. I agree that the analysis is somewhat related, but you still need to show proximate cause between the actions that the defendant engaged in and the injury that is ultimately found. And I really do think that Philadelphia v. Beretta is on all fours with this case. A very well-reasoned decision joined by two very highly regarded federal judges in this country who generally have otherwise different approaches to the law came to agreement on this case and said it wasn't anywhere close to establishing proximate cause. But even if you thought that the two were somehow related, proximate cause and Twitter, we still win because I think we're right under Twitter and we're right under proximate cause. Twitter is a much easier case than this one. If there was no aiding and abetting liability in Twitter, then there sure is no aiding and abetting liability here, where there is no evidence that there's any kind of joint purpose between the manufacturers and the one distributed here on the one hand and the harms and the alleged violations of law on the other. Not a shred of evidence that there's some kind of joint purpose, that they want to make it succeed as their own. There was far more evidence of that in Twitter than there is in this case. And I would emphasize that that kind of ruling on aiding and abetting liability would have dramatic implications well beyond this case to all defendants who are charged with any form of aiding and abetting liability throughout this country because you would have adopted a theory that pushes the bounds of aiding and abetting liability well beyond where it's ever gone and direct sales isn't even closely on point. They do say that the marketing was designed and some of the product design decisions were designed precisely to aid and abet the retailers in having an attractive product for the cartels. Well, a couple of points. The district court rejected their marketing theory on the merits under state law, and they haven't appealed that issue. If you actually look at the complaint, there is no allegation that the defendant's marketing is not in any way false. It's actually technically true. It's accurate. It states exactly what the firearms do, and I don't think you could possibly establish proximate cause between the marketing and any alleged violations. They don't even allege that the violators saw the marketing, or particularly the end individuals who were charged with inflicting injury on Mexico. There's no allegation that they even saw the marketing material, so I don't know how you could possibly satisfy proximate cause on that theory, which is probably why it's not an argument that they're strongly pressing on this appeal. Here, though, I think it is quite clear that PLACA applies. They haven't adequately alleged any violation of law, not aid and abetting, not the machine gun ban, and even if they had, I think this case is on all fours with the Third Circuit's decision in the city of Philadelphia against Beretta. Let me ask you, in your client's views, all the defendant's views, are there any Second Amendment implications in this analysis? Oh, I sure think that there are Second Amendment implications in this analysis, because you're talking about a lawsuit that has potentially crippling effects on the ability of individual firearms owners to obtain firearms. They're also asking you to apply Mexican law to the regulation of U.S. firearms in this country, and while I agree with my friend that the choice of law analysis is totally irrelevant here, we win no matter how you resolve the choice of law analysis, I would emphasize that they are completely wrong on the choice of law question. They concede that the only reason they filed this lawsuit in the United States is because they want an injunction regulating the manufacture and sale of firearms in this country. Well, obviously the United States and its constituent states have the greatest interest in how firearms are made and sold in this country. Otherwise, that manufacture and sale wouldn't be just governed by the tort laws of Mexico, they'd be governed by the tort laws of every country in the world, including countries like Russia and China, who could easily cobble together a complaint that's no different than the one that Mexico has filed here. You mentioned the issue of the injunction, and let me say, this is a case that was brought in the District of Massachusetts, so assuming we were to reverse the district court and the district court would impose an injunction, that's not a universal injunction, it would only apply to Massachusetts at this time, am I correct? Your Honor, I think that's an issue to be decided on remand. I think that we would argue that it be applied narrowly. Generally, an injunction applies to the party before the court, though. So I'm not sure what the answer to that question is. One more quick question. Mexico has a page long footnote that cites a bunch of trial court decisions that take the position that once there's a predicate violation, there can be civil liability. And you mentioned those cases in your brief, and you say they're unpersuasive. I'm wondering if you could just take me quickly through your argument. Sure, absolutely. The first point I would make is it doesn't matter. Because even if you think that that one aspect of Judge Saylor's opinion was wrong, they still haven't alleged any violation of any federal or state firearm statute adequately alleged. And even if they have, they still haven't adequately alleged proximate cause. Secondly, as to those decisions, and all of this goes to whether a statutory predicate violation has to be a statute that itself creates a cause of action. If you actually read those decisions, Judge Saylor is the first judge that's ever substantively addressed this issue. Those opinions are kind of more in the nature of drive-by rulings that kind of assume it to be the case but don't analyze the issue. I happen to think Judge Saylor was right, but I also don't think it matters to the resolution of this case. Because they still haven't alleged a violation, and they still haven't alleged proximate cause. But the reason I think Judge Saylor was right is because the way the statute works is it sets up two buckets for statutory violations. If a statutory violation has a private right of action, it fits under the predicate exception. If it doesn't have a private right of action, it fits under negligence per se. That is the whole point of the negligence per se doctrine. It is a common law rule that allows you to enforce statutory violations where the statute does not itself create a cause of action. And their position blurs the distinction between those two buckets. Judge Saylor's view respects the distinction between those two buckets, which is why I believe he was 100 percent right on that. But I would emphasize I also don't think that it matters because their claim fails for lots of other reasons. Thank you. Thank you, Your Honor. Attorney Shadowin, please reintroduce yourself for the record and proceed with your rebuttal, please. Steve Shadowin on behalf of the government. You reserved, what, two minutes? Two minutes. And your colleague reserved one minute. That's right. Unless the court has any questions for me on extraterritoriality or choice of law, I'm going to cede my two minutes to Mr. Lowy. Good idea. Thank you. Thank you, Your Honors. Jonathan Lowy again for the government of Mexico. A few quick responses. One, my friend, defense counsel, cites Twitter repeatedly. Twitter does not help them at all. Twitter cited direct sales approvingly when talking about potential claims that are still allowed in a future case. And also, Twitter does nothing to address direct sales' central point, which is when you're dealing with a regulated product that's sought after by criminals and traffickers, like drugs and guns, there's a very different standard than ordinary commerce, which in the Twitter case were tweets. So, again, Twitter helps us. Also, our case is, if anything, stronger than direct sales, even without discovery. Because, for one, we allege, and this is a complaint at paragraphs 90 and 91, that the U.S. Department of Justice 20 years ago asked these defendants to stop supplying high crime dealers and stop engaging a lot of these practices that are the focus of our case. And the defendants completely refused. That is completely contrary to direct sales, where the government asked the defendant to stop doing some of these bulk purchases. And the defendant listened, but didn't do quite enough and ended up being convicted of criminal conspiracy. So the case is stronger. Is there an allegation of something analogous to bulk purchases here that the defendants would know about? Absolutely. I mean, that's one of the major practices of traffickers. You have someone going into a gun store saying, I want a dozen assault weapons, I want thousands of rounds of ammunition. Everyone knows that person's a trafficker. They come back a week later, they want another dozen. I had a case where they had wanted 85 guns in a single purchase. So the retailer would know that. The retailer and the manufacturer has that information if they want to. And if they don't have it, they're willfully blind to it. So it's exactly the same thing. In fact, direct sales was a mail order company. It had no interaction with the defendant, much less interaction than these defendants, as a matter of fact. The defense also, they talk about the city of Philadelphia repeatedly. The city of Philadelphia is contrary to the city of Boston, which properly states Massachusetts law. And by the way, there are a handful of cases that agree with the city of Boston on proximate cause and everything else, including the Supreme Court of Ohio in the city of Cincinnati, the Supreme Court of Indiana in the city of Gary, federal court in White v. Smith & Wesson. All those cases agree with the city of Boston, which is in Massachusetts law contrary to the city of Philadelphia. They also cite Nieves-Castro and the Staples case in the machine gun point. Both of those cases are only talking about mens rea. That's it. The mens rea are required to violate the machine gun ban, not what constitutes a machine gun. They cannot dispute ATF ruling 82-8, which makes absolutely clear that what we allege violates the machine gun ban. Let me ask you just one question. Let's assume that you're right and the block of statute doesn't bar Mexico law from applying right now as construed. That wouldn't prevent Congress from further amending the statute. Maybe it's a civil statute making it retroactive, correct? But in your view, it would have to be Congress to do that? Certainly, Congress could. I'm not prejudging whether that would be constitutional to retroactively do it or whether there would be other problems. Perspectively, Congress could amend the statute where you say there's a lagoon there that allows you to apply Mexico law, correct? Congress could certainly amend PLACA to say what the district court said, which is the predicate exception is limited to statutory actions. Congress clearly chose not to do that, even though the district court incorrectly ruled that that was the meaning of the predicate exception. Thank you. Are there no further questions? Thank you. Thank you. That concludes arguments in this case.